# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| **INNOVATIVE V, LLC D/B/A TPH ACADEMY,**<br><br>        **Plaintiff,**<br><br>**v.**<br><br>**THE ST. JAMES SPORTS & WELLNESS COMPLEX LLC,**<br><br>        **Defendant.** | **Court No. 1:25-cv-01055-JCG** |

## <u>OPINION AND ORDER</u>

[Granting in part and denying in part Defendant's Motion to Dismiss.]

Dated:  June 8, 2026

<u>Jeremy D. Anderson</u> and <u>Jeffrey J. Lyons</u>, Baker & Hostetler LLP, of Wilmington, DE.  Attorneys for Plaintiff Innovative V, LLC d/b/a TPH Academy.

<u>Margaret M. DiBianca</u>, DiBianca Law, of Wilmington, DE; <u>David L. Greenspan</u> and <u>Zachary J. Poretz</u>, McGuire Woods LLP, of Tysons, VA.  Attorneys for Defendant The St. James Sports & Wellness Complex, LLC.

Choe-Groves, Judge:  Plaintiff Innovative V, LLC d/b/a TPH Academy ("Plaintiff" or "TPH Academy") filed this case against Defendant The St. James Sports & Wellness Complex, LLC ("Defendant" or "St. James") alleging breach of contract, tortious interference, and unfair competition.  Second Am. Compl. at ¶¶ 80–140, (D.I. 24).

Court No. 1:25-cv-01055                                                    Page 2

Before the Court is Defendant's Partial Motion to Dismiss and Motion to

Strike Plaintiff's Prayer for Punitive Damages and Demand for a Jury Trial

("Motion to Dismiss") (D.I. 25).  See Mem. Law Supp. Def.'s Partial Mot. Dismiss

Mot. Strike Pl.'s Prayer Punitive Damages Demand Jury Trial ("Def.'s Br.") (D.I.

26).

For the reasons discussed below, Defendant's Motion to Dismiss is granted

in part and denied in part.

## BACKGROUND

TPH Academy is an Alabama limited liability company and development

group that works with middle school, high school, and post-graduate student-

athletes to help them achieve their goals in a variety of sports.  Second Am.

Compl. at ¶¶ 1, 12.  TPH Academy owns, operates, and supports numerous multi-

sport academies and offers academy services to multi-sport facilities, youth sport

organizations, and families involved in youth sports.  Id. at ¶¶ 1–2.  In 2019, TPH

Academy approached St. James about launching an academy for the hundreds of

middle and high school student-athletes who train at St. James' 20-acre, 450,000-

square-foot, multi-purpose sports complex in Springfield, Virginia.  Id. at ¶ 4.  In

March 2024, TPH Academy and St. James entered into an agreement in which

TPH Academy would set up and run the St. James' academy in partnership with St.

James for three years.  Id. at ¶ 5; see Ex. 1 ("the Agreement") (D.I. 24-1).  TPH

Court No. 1:25-cv-01055                                                    Page 3

Academy alleges that St. James terminated the Parties' Agreement in July 2025, or nearly a year after the Parties entered the Agreement, which was long enough for TPH Academy "to position [St. James] for tremendous financial success in year two of the agreement." Id. at ¶ 7. TPH Academy alleges that St. James cut out TPH Academy "under the pretext that [TPH Academy] committed a 'material breach'" and "made-up issues that it had never raised with [TPH Academy]" to support its "fake material breach claim." Id. at ¶¶ 7–8. TPH Academy alleges that St. James operated the academy for the 2025–26 school year (or year two of the contract) by employing TPH Academy's most important employee, partnering with TPH Academy's school solution (Stride/K12), using TPH Academy's best practices, and continuing to use TPH Academy's name and logo. Id. at ¶ 9.

Plaintiff filed this case on August 22, 2025. Compl. (D.I. 1). Several motions to dismiss were deemed moot upon the filing of amended complaints, and Plaintiff filed the current Second Amended Complaint on February 9, 2026. Defendant's Motion to Dismiss followed.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that pleadings contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(1). If pleadings fail to state a claim, in whole or in part, on which a court may grant relief, a defendant may seek to dismiss a complaint under Federal

Court No. 1:25-cv-01055                                                      Page 4

Rule of Civil Procedure 12(b)(6).  Fed. R. Civ. P. 12(b)(6).  "To survive a motion

to dismiss, a complaint must contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal ("Iqbal"),

556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly ("Twombly"), 550

U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  Id.  Plausibility requires "more

than a sheer possibility that a defendant has acted unlawfully."  Id.  In considering

a motion to dismiss, the Court must assume the factual allegations contained in the

complaint to be true and draw all reasonable inferences in favor of the non-moving

party.  Twombly, 550 U.S. at 555–56.  However, "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not

suffice" to state a claim.  Iqbal, 556 U.S. at 678; see Donald J. Kochan, While

Effusive, "Conclusory" is Still Quite Elusive: The Story of a Word, Iqbal, and a

Perplexing Lexical Inquiry of Supreme Importance, 73 U. Pitt. L. Rev. 215, 307

(2011) ("'[C]onclusory' sets a standard that requires a certain degree of case-by-

case, contextual analysis").

## DISCUSSION

Defendant moves to partially dismiss the Second Amended Complaint for

asserting breaches of portions of the Agreement's non-solicitation provision that

Defendant argues are inapplicable.  Def.'s Br. at 1–2.  Defendant contends that

Virginia law governs Plaintiff's tort claims, and the claims should be dismissed for

failure to plead sufficient facts.  Id. at 2.  Defendant asserts that the prayer for

punitive damages must be stricken, and Plaintiff's jury demand should be deemed

waived and stricken.  Id.

## I.     Count II

Defendant argues that Plaintiff's claim that St. James breached Sections

9(a)–9(c) of the Agreement by disturbing TPH Academy's relationship with its

school solution, K12 Virtual Schools LLC ("K12"), must fail because those

sections of the Agreement are either inapplicable or Plaintiff failed to allege facts

sufficient to show breach.  Id. at 4–6.  Plaintiff argues that the allegations in the

Second Amended Complaint and the reasonable inferences that can be drawn are

sufficient to show that St. James breached Sections 9(a)–9(c) of the Agreement.

Pl.'s Answering Br. Opp'n Def.'s Partial Mot. Dismiss Mot. Strike ("Pl.'s Resp.

Br.") at 7–9, (D.I. 27).

Section 9 of the Agreement states in relevant part:

> 9.     Non-Solicitation. [St. James] agrees during the Term of this
> Agreement and for a period of two (2) years immediately thereafter, it
> shall not directly, or indirectly, for itself, or as an agent or representative
> of any person or for any business entity, except as set forth in this
> Section 9: (a) advise, induce or persuade any person or business not to
> do business with [TPH Academy] or to cancel or fail to renew any
> contract with [TPH Academy]; (b) employ, retain, contract with or
> interfere with any employees or independent contractors of [TPH

> Academy] with respect to the work performed by such employees and independent contractors for, or on behalf of, [TPH Academy]; (c) solicit, induce, persuade, or advise any employees or independent contractors of [TPH Academy] to terminate any relationship with [TPH Academy.]

Agreement at §§ 9(a)–9(c).

In the Amended Complaint, Plaintiff states that TPH Academy retained the services of Stride, Inc., which is a leader in online education.  Second Am. Compl. at ¶ 37.  Stride, Inc. is the parent of K12.  Id.  In the second year of the Agreement with St. James, TPH Academy and K12 entered into a Memorandum of Understanding for the 2025–26 school year.  Id. at ¶ 38.  Plaintiff states that St. James asked TPH Academy to find a school solution to help qualify the academy teams for recognized state championships, and TPH Academy coordinated with and sourced Stride/K12's Virginia-based partner, The Keystone School.  Id. at ¶ 39.  Plaintiff alleges that after St. James terminated the Agreement improperly, TPH Academy received an email from the Vice President of K12 School Development stating that they had learned that TPH Academy would not be working with St. James for the 2025–26 school year.  Id. at ¶ 64.  Prior to the email, TPH Academy alleges that the Vice President of K12 School Development had texted TPH Academy's Chief Academic Officer to share that St. James had requested a proposal from K12 without TPH Academy.  Id. at ¶ 65.  The K12 Vice President stated that the Memorandum of Understanding signed in February of

2025 "is no longer needed" and provided a draft termination agreement.  Id. at

¶ 66.  Plaintiff alleges that St. James knew that TPH Academy had contracted with

K12 to provide academic services and knew an agreement existed between K12

and TPH Academy.  Id. at ¶ 68.

Count II of the Second Amended Complaint alleges breach of Section 9 of

the Agreement because St. James knowingly and intentionally: 1) advised,

induced, and persuaded Stride/K12 not to do business with TPH Academy under

its agreement with TPH Academy and to cancel the agreement; 2) retained and

contracted with Stride/K12 with respect to the work performed by Stride/K12 for,

or on behalf of, TPH Academy; and 3) solicited, induced, persuaded, and advised

K12 to terminate its relationship with TPH Academy.  Id. at ¶¶ 91–98.

Defendant argues that Plaintiff cannot rely on Sections 9(b) or 9(c) for

Count II because K12 was not an employee or independent contractor, but a

business with whom TPH Academy contracted.  Def.'s Br. at 5.  Defendant argues

that Plaintiff's claim under Section 9(a) also fails because Plaintiff does not allege

facts sufficient to show that St. James advised, induced, or persuaded K12 to

cancel or fail to renew its contract with TPH Academy.  Id. at 5–6.  Plaintiff argues

that K12 was an independent contractor, and that the factual allegations are

sufficient to state a claim under Section 9 of the Agreement.  Pl.'s Resp. Br. at 8–9.

Court No. 1:25-cv-01055                                                  Page 8

The Second Amended Complaint describes K12 as a business entity with which TPH Academy contracted to receive online education services.  See Second Am. Compl. at ¶¶ 37–40.  Defendant focuses on Section 9's use of "business" in some areas and "independent contractor" in others to contend that independent contractors can only be individuals and not businesses.  Reply Br. Supp. Def.'s Partial Mot. Dismiss Mot. Strike Pl.'s Prayer Punitive Damages Demand Jury Trial ("Def.'s Reply Br.") at 2–4, (D.I. 28).  The Agreement does not define "Independent Contractor."  See Agreement.  At this stage, accepting the factual allegations as true and drawing all reasonable inferences in favor of nonmovant Plaintiff, K12's status as an independent contractor is plausible, and the Court expects that further discovery will provide insight into the context of the Agreement and the exact nature of the relationship between K12 and TPH Academy.

The factual allegations in the Second Amended Complaint also create a plausible basis to infer that K12's termination of its Memorandum of Understanding with TPH Academy was influenced by the conversations it had with St. James prior to the termination and in violation of Section 9(a) of the Agreement.  See Second Am. Compl. at ¶¶ 64–68.  The Court concludes that the Second Amended Complaint provides enough facts in support of Count II to raise a reasonable expectation that discovery will reveal evidence to support Plaintiff's

Court No. 1:25-cv-01055                                                    Page 9

allegations, which is all that the plausibility standard requires of Plaintiff at this stage.  See Twombly, 550 U.S. at 556.  Accordingly, Defendant's Motion to Dismiss Count II is denied.

## II.    Choice of Law for Plaintiff's Tort Claims

Defendant argues that the Court must determine whether Virginia or Delaware law governs Plaintiff's tort claims.  Def.'s Br. at 6.  Defendant contends that the Court should apply Delaware's choice of law standards, which require the Court to assess whether an actual conflict between the states' laws exists.  Id. at 6–7.  Defendant avers that a conflict exists because the application of the competing laws would not yield the same result, and the Court must apply the "most significant relationship" test, which supports the application of Virginia law.  Id. at 8–10.  Defendant asserts that Virginia law limits punitive damages to $350,000, requires a defendant to plead an element of tortious interference that Delaware does not, and adheres to a stricter definition of unfair competition.  Id. at 7–9.

Plaintiff agrees that the Court must apply Delaware's choice of law framework to determine which state law applies, but argues that there is no conflict between Virginia and Delaware law.  Pl.'s Resp. Br. at 10–13.  Plaintiff contends that a cap on punitive damages is a technicality that does not impact whether a claim survives as a matter of state law.  Id. at 10–11.  Plaintiff avers that the "improper methods" element that Virgina law requires for a tortious interference

claim refers to a broad category of conduct that Delaware law's "malicious" and "bad faith" requirements fall under. Id. at 12–13. Plaintiff argues that the allegations of unfair competition in the Second Amended Complaint are pled such that they satisfy the elements of an unfair competition claim in either Delaware or Virginia, and no conflict exists. Id. at 13.

The Court disagrees that an analysis of Delaware's choice of law rules is necessary to determine what law governs Plaintiff's tort claims. The Agreement between the Parties contains a choice of law provision stating clearly that Delaware law governs "[t]he interpretation and construction of this Agreement, the obligations of the Parties, and any claims or disputes relating to this Agreement[.]" Agreement at § 10(i). The Parties agree that the Counts IV, V, and VI sound in tort, and the Court concludes that the choice of law provision in the Agreement is broad enough to encompass disputes beyond those arising from the construction of the contract itself. See Market Am., Inc. v. Google, Inc., No. 09-494-GMS, 2011 WL 1485616, at *3 (D. Del. Apr. 19, 2011) (holding that the parties intended for Delaware law to govern all disputes related to a license agreement, whether sounding in contract or tort, because the choice of law provision also covered disputes "arising out of or relating to" the agreement); see also Gloucester Holding Corp. v. U.S. Tape and Sticky Prods., LLC, 832 A.2d 116, 124 (Del. Ch. 2003) ("There are certain circumstances where courts have held that a broad choice of

law clause in a contract could encompass tort claims that relate to contract formation.").

Delaware public policy supports the application of Delaware law to all of Plaintiff's claims, as this will prevent bifurcation of the contract claims and the other related claims. Market Am., Inc., 2011 WL 1485616, at *3 (citing Pharmathene, Inc. v. Siga Techs., Inc., No. 2627–VCP, 2008 WL 151855, at *7 (Del. Ch. 2008) (quoting Weil v. Morgan Stanley DW Inc., 877 A.2d 1024, 1032–33 (Del. Ch. 2005), aff'd, 894 A.2d 407 (Del. 2005) (a contract "should not be interpreted in a crabbed way that creates a commercially senseless bifurcation between pure contract claims and other claims that arise solely because of the nature of the relations between the parties created by the contract."))).

The Court concludes that Delaware law shall govern Plaintiff's tort claims. Accordingly, Defendant's arguments that Plaintiff fails to state its tort claim under Virginia law are rendered moot.

## III. Prayer for Punitive Damages

Defendant argues that TPH Academy's prayer for punitive damages should be stricken if the tort claims are dismissed. Def.'s Br. at 14–15. Because the Court is not dismissing Plaintiff's tort claims, Defendant's request to dismiss Plaintiff's prayer for punitive damages is denied.

Court No. 1:25-cv-01055                                                    Page 12

## IV.    Waiver of Jury Trial

Defendant argues that TPH Academy waived its right to a jury trial in Section 10(i) of the Agreement.  Def.'s Br. at 15.  Plaintiff counters that the jury trial waiver applied only to claims arising from the Agreement, such as Plaintiff's breach of contract claims.  Pl.'s Resp. Br. at 17–18.  Plaintiff argues that the tortious interference and unfair competition claims are not premised on the Agreement.  Id.  Plaintiff avers that the right to a jury trial is fundamental, such that the expansive reading of the jury trial waiver that Defendant proposes should be disregarded.  Id. at 18.  Defendant argues that Plaintiff's tort claims are related sufficiently to the Agreement such that the Court should strike the jury demand in its entirety.  Def.'s Reply Br. at 9–10.

Section 10(i) of the Parties' Agreement states:

> The interpretation and construction of this Agreement, the obligations of the Parties, and any claims or disputes relating to this Agreement, shall be governed by and construed in accordance with the domestic laws of the State of Delaware, excluding the choice or conflicts of law rules of that state which might otherwise be applicable.  EACH OF THE COMPANY AND TPH WAIVES TRIAL BY JURY AND CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY THE COURT.

Agreement at § 10(i) (emphasis in original).

The right to a civil jury trial is guaranteed by the Seventh Amendment and "courts indulge every reasonable presumption against waiver."  Aetna Ins. Co. v.

Kennedy, 301 U.S. 389, 393 (1937).  A litigant may waive the right to a jury trial in a civil case, and a contractual waiver is enforceable if it was made knowingly and voluntarily based on the facts of the case.  Tracinda Corp. v. DaimlerChrysler AG, 502 F.3d 212, 222 (3d Cir. 2007).  A contractual waiver is knowing and voluntary when the facts of the case show that "(1) there was no gross disparity in bargaining power between the parties; (2) the parties are sophisticated business entities; (3) the parties had an opportunity to negotiate the contract terms; and (4) the waiver provision was conspicuous."  First Union Nat'l Bank v. United States, 164 F. Supp. 2d 660, 663 (E.D. Pa. 2001) (cited in Tracinda Corp., 502 F.3d at 222).

Plaintiff disputes that it waived its right to a jury trial for its tort claims. Pl.'s Resp. Br. at 17–18.  The Court notes that no discovery has occurred yet in this case, which might provide facts as to whether Plaintiff knowingly and voluntarily waived its right to a jury trial for its tort claims.  The Court declines to interpret the jury trial waiver broadly and such that a jury demand for all of Plaintiff's claims was waived unequivocally.  The Court will strike Plaintiff's demand for a jury trial only as to its breach of contract claims, which Plaintiff concedes are covered by the waiver.  Id. at 18.

Court No. 1:25-cv-01055                                                                    Page 14

## CONCLUSION

Upon consideration of Defendant's Motion to Dismiss (D.I. 25), and all other papers and proceedings in this action, it is hereby

**ORDERED** that Defendant's Motion to Dismiss (D.I. 25) is granted in part and denied in part; and it is further

**ORDERED** that Plaintiff's demand for a jury trial is stricken as to its breach of contract claims; and it is further

**ORDERED** that on or before July 6, 2026, the Parties shall meet and confer and file a joint proposed Scheduling Order in this action consistent with the applicable form Scheduling Order of Judge Connolly, which is posted at https://www.ded.uscourts.gov/ (See Chambers, Chief Judge Colm F. Connolly), with a cover letter requesting the Court to enter the joint proposed Scheduling Order (if there are no disputes or other issues concerning scheduling that the Court needs to address) or to schedule the Scheduling Conference.  If the Parties are unable to agree upon a proposed scheduling order, each Party shall file a proposed scheduling order by the deadline and contact my Case Manager, Steve Taronji, by telephone at (212) 264-1611 or via e-mail at steve_taronji@cit.uscourts.gov, to arrange a conference with the Court.

IT IS SO ORDERED this 8th day of June, 2026.

                                               _/s/ Jennifer Choe-Groves_
                                                     Jennifer Choe-Groves
                                       U.S. District Court Judge[*]

---

[*]Judge Jennifer Choe-Groves, of the United States Court of International Trade, sitting by designation.